14-1010-bk
Crest One SpA v. TPG Troy

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2014

(Argued: February 19, 2015                    Decided: July 14, 2015)

Docket No. 14-1010-bk, 14-1037-bk(con), 14-1062-bk(con)

_____

IN THE MATTER OF:  TPG TROY, LLC,

*Debtor*,

_____

CREST ONE SpA, LANSDOWNE CAPITAL SA,
SPQR CAPITAL (CAYMAN) LTD.,

*Appellants,*

v.

TPG TROY, LLC,

*Appellee,*

T3 TROY, LLC,

*Consolidated-Appellee.*

_____

Before: WINTER, POOLER, SACK, *Circuit Judges*.

Crest One SpA, Lansdowne Capital SA, and SPQR Capital (Cayman) Ltd. (together, the "Creditors") appeal from the March 4, 2014 decision and the March 6, 2014 order of the United States District Court for the Southern District of New York (Torres, *J.*): (1) affirming the May 9, 2013 decision of the United States Bankruptcy Court for the Southern District of New York (Glenn, *B.J.*) dismissing the Chapter 7 involuntary bankruptcy petitions filed by the Creditors against TPG Troy, LLC and T3 Troy, LLC (together, the "Troy Entities"); (2) denying the Creditors' motion to withdraw the reference to bankruptcy court; and (3) affirming the July 18, 2013 opinion by the same bankruptcy court awarding the Troy Entities $513,427.16 in attorneys' fees and costs pursuant to 11 U.S.C. § 303(i)(1). Finding no error in the decisions below, we affirm.

Affirmed.

_____

JARED B. STAMELL, Stamell & Schager, LLP (Andrew R. Goldenberg, *on the brief*), New York, N.Y., *for Appellants Crest One SpA, Lansdowne Capital SA, and SPQR Capital (Cayman) Ltd.*

MICHELE L. ANGELL, Kasowitz, Benson, Torres & Friedman LLP (Paul M. O'Connor III; Andrew K. Glenn,

*on the brief*), New York, N.Y., *for Appellees TPG Troy LLC, and T3 Troy LLC.*

POOLER, *Circuit Judge*:

Crest One SpA, Lansdowne Capital SA, and SPQR Capital (Cayman) Ltd. (together, the "Creditors") appeal from the March 4, 2014 decision and the March 6, 2014 order of the United States District Court for the Southern District of New York (Torres, *J.*): (1) affirming the May 9, 2013 decision of the United States Bankruptcy Court for the Southern District of New York (Glenn, *B.J.*) dismissing the Chapter 7 involuntary bankruptcy petitions filed by the Creditors against TPG Troy, LLC and T3 Troy, LLC (together, the "Troy Entities"); (2) denying the Creditors' motion to withdraw the reference to bankruptcy court; and (3) affirming the July 18, 2013 opinion by the same bankruptcy court awarding the Troy Entities $513,427.16 in attorneys' fees and costs pursuant to 11 U.S.C. § 303(i)(1). Finding no error in the decisions of the courts below, we affirm.

## BACKGROUND

This case is one of many commenced by the Creditors and others to recover losses incurred when subsidiaries of Hellas Telecommunications, s.a.r.l. defaulted on notes valued at roughly € 1.3 billion (the "Notes"). The Troy Entities

3

partially owned Hellas at the time the Notes were issued. The Troy Entities maintain they did not issue or guarantee the Notes, and had sold their interest in Hellas long before the default. Nevertheless, the Creditors and similarly interested parties are engaged in a vigorous global litigation campaign to recover their losses on the Notes from the Troy Entities and others.

At the time the involuntary bankruptcy petitions were filed, the Creditors were directly or indirectly involved in multiple lawsuits to recover on the Notes, including: (1) four actions in New York State Supreme Court seeking to recover on the Notes from the Hellas companies and other defendants, including the Troy Entities; (2) two actions in California and two in Delaware, all subsequently dismissed pending a decision on the New York State Supreme Court actions; (3) three actions in the Southern District of New York , two of which were dismissed for lack of standing; and (4) two European actions seeking to recover on the Notes.

On December 21, 2012, the Creditors filed involuntary petitions against the Troy Entities in bankruptcy court pursuant to 11 U.S.C. § 303, asserting that the Troy Entities were liable for the debts of the Hellas companies based on an alter ego theory. The Troy Entities moved to dismiss the petitions. The bankruptcy

court dismissed the petitions on two grounds. First, the bankruptcy court concluded that dismissal was appropriate under 11 U.S.C. § 303(b)(1). *In re TPG Troy, LLC*, 492 B.R. 150, 159 (Bankr. S.D.N.Y. 2013). The court found there was a bona fide dispute as to whether a debt was owed, based on the "plethora of ongoing litigation," and the factual showing made by the Troy Entities as to whether they engaged in the transaction at issue. *Id.* at 160. Second, in the alternative, the bankruptcy court concluded abstention pursuant to 11 U.S.C. § 305(a)(1) was proper, given that litigation regarding the same transaction was already in progress in multiple other forums, and the primary issues implicated state, not federal, law. *Id.* at 160-61.

After the bankruptcy court dismissed the involuntary petitions, the Troy Entities moved to recover attorneys' fees, costs, and punitive damages pursuant to 11 U.S.C. § 303(i). The bankruptcy court declined to award punitive damages, but awarded the Troy Entities $513,427.16 in attorneys' fees and costs. *In re TPG Troy, LLC*, Nos. 12-14965, 12-14966, 2013 WL 3789344, at *5 (Bankr. S.D.N.Y. July 18, 2013). The bankruptcy court found that "[b]ased on the totality of the circumstances," a fee award was appropriate, and that the fees and costs sought were "reasonable under the circumstances." *Id.* at *4. The bankruptcy court

declined to exercise its discretion to award punitive damages, finding that "[t]he amount of attorneys' fees and costs awarded by the Court in this case is very substantial and will hopefully serve as a deterrent to similar misconduct in the future." *Id.* at *5.

The Creditors appealed the dismissal of the involuntary petitions and the award of attorneys' fees and costs to the district court. The district court affirmed the bankruptcy court in full. This appeal followed. On appeal, the Creditors argue that this Court lacks jurisdiction to consider their own appeal on the basis of mootness, that they were entitled to a jury trial to determine whether attorneys' fees were warranted, and that bankruptcy court erred in awarding attorneys' fees.

## DISCUSSION

Legal issues arising from potential mootness are reviewed de novo. *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 161 (2d Cir. 2010). "The district court's order affirming the bankruptcy court is subject to plenary review. This court reviews conclusions of law de novo, and findings of fact under a clearly erroneous standard." *Tudisco v. United States* (*In re Tudisco*), 183 F.3d 133, 136 (2d Cir. 1999) (internal citation, quotation marks and alteration omitted).

6

## I.     Jurisdiction.

On July 24, 2014, the Creditors moved to dismiss their own appeal for lack of jurisdiction. The Creditors argued that because the district court affirmed both the bankruptcy court's holdings on the existence of a bona fide dispute and abstention, this appeal is moot because the district court's decision to abstain under Section 305(a) is unreviewable by our Court pursuant to 11 U.S.C. § 305(c). *See* 11 U.S.C. § 305(c) ("An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise by the court of appeals . . . or by the Supreme Court of the United States . . ."). The Creditors also sought to vacate both the finding of a bona fide dispute and the award of attorneys' fees and costs, on the ground that judgments that rely on moot issues should be vacated. A panel of our Court denied the motion:

> While Appellants are correct that this Court lacks jurisdiction to review a bankruptcy court's decision to abstain under 11 U.S.C. § 305(a), the Court does not lack jurisdiction to review, at the very least, the bankruptcy court's award of attorney's fees and costs.

*In re TPG Troy, LLC*, 14-1010, Dkt. No. 104 (2d Cir. Oct. 3, 2014) (internal citation omitted).

7

Appellate courts have "an independent obligation to examine their own jurisdiction." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). "[T]he law of the case doctrine does not deprive an appellate court of discretion to reconsider its own prior rulings." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999). "[R]eexamination of a question regarding our jurisdiction is especially important whenever there is reason to believe that it may be lacking." *Id*. The prohibition on the review of moot cases arises from "the Article III requirement that federal courts adjudicate only 'Cases' and 'Controversies.'" *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 139-40 (2d Cir. 1994). Because it goes to the court's subject matter jurisdiction, mootness may be raised at any stage in the litigation. *Id*. at 140.

While our Court has yet to consider the precise issue of whether a finding of abstention under Section 305(a) bars review of an attorneys' fee award, it addressed a similar issue in *Calabro v. Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 165 (2d Cir. 2011). There, we lacked appellate jurisdiction to review a district court order remanding a case to state court pursuant to 28 U.S.C. § 1447(d). *Id*. at 165. However, our Court found it possessed jurisdiction to review the statutorily-authorized award of attorney's fees and costs made by the district court when it

8

found removal improper. *Id.* Similarly, here the attorneys' fees and costs at issue are expressly authorized by Section 303(i), and there is no discernable basis for treating this Court's jurisdiction differently. Further, other Circuits hold that a money judgment for attorneys' fees and costs provides the court with a live controversy capable of review even if the underlying issues raised by the appeal are moot. *See Lynch v. Leis*, 382 F.3d 642, 646 (6th Cir. 2004) ("This appeal concerns the propriety of the fee award, which presents a live case or controversy between the parties: a monetary judgment against the defendants below indubitably presents a live appeal."); *Ways v. City of Lincoln*, 274 F.3d 514, 517 n.3 (8th Cir. 2001) ("[S]ince the fee award is part of the appeal, the constitutionality of the repealed ordinance needs to be addressed even if there were no prospect of reinstatement of the original ordinance"); *C&H Nationwide, Inc. v. Norwest Bank Texas NA*, 208 F.3d 490, 494 (5th Cir. 2000) ("[W]e can reach a now-moot substantive issue when necessary to determine whether the district court correctly awarded attorney's fees under state law.").

Finding we possess jurisdiction, we proceed with our review.

**II.    Jury trial.**

Creditors next argue they were entitled to a jury trial on the issue of

9

awarding attorneys' fees and costs. Relying on *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Creditors further argue the bankruptcy court lacked the constitutional authority to deem their jury demand waived. This argument is foreclosed by the Supreme Court's opinion in *Wellness International Network v. Sharif*, 135 S. Ct. 1932 (2015). In *Wellness International*, the Supreme Court made clear that "Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge." *Id.* at 1939. "[T]he key inquiry is whether the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the non-Article III adjudicator." *Id.* at 1948 (internal quotation marks omitted).

We easily conclude that the Creditors "knowingly and voluntarily consent[ed]" here. Our conclusion is based on the following colloquy between the bankruptcy court and Creditors' counsel:

> The Court: . . . let's assume no punitive damages.
>
> Mr. Stamell: Fine.
>
> The Court: Do you agree that your client is not entitled to a jury trial on the issue of attorneys' fees and costs under 303(i)(1)?
>
> Mr. Stamell: May I answer it the following way, that

10

> under those circumstances, we would not find it
> necessary to argue the point of whether there is a jury –
> a right to a jury.
>
> The Court:   So absent punitive damages, you agree that
> your client either is not entitled or doesn't demand a
> jury with respect to attorneys' fees and costs under
> 303(i)(1), correct?
>
> Mr. Stamell: I don't want to waive the argument I'm not
> entitled but we would not – we would be content to
> consent to Your Honor determining the fees.

App'x at 1382:4-20. Like the courts below, we are persuaded that Creditors'

counsel consented to the bankruptcy court exercising its jurisdiction to award

attorneys' fees and costs pursuant to Section 303(i)(1) absent an award of

punitive damages. *See In re TPG Troy LLC*, 2013 WL 3789344, at * 1.

### III.    Bona fide dispute.

We review the conclusion that there is a bona fide dispute requiring

dismissal of the involuntary petitions solely for the purpose of deciding whether

there was a basis for the award of attorneys' fees and costs pursuant to Section

303(i).[1]

---

[1] Section 303(i) authorizes an award of attorneys' fees when "the court dismisses a petition under this section other than on consent of all petitioners and the debtor." 11 U.S.C. § 303(i). As Section 303(i) does not explicitly reference abstention, the law is unsettled as to whether the statute provides for attorneys'

Section 303(b) of the Bankruptcy Code provides:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title- - -
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute . . .

11 U.S.C. § 303(b).

Courts apply an objective test in determining whether a bona fide dispute exists. *Key Mech. Inc. v. BDC 56 LLC* (*In re BDC 56 LLC*), 330 F.3d 111, 117-18 (2d Cir. 2003), *abrogated on other grounds by In re Zarnel*, 619 F.3d 156 (2d Cir. 2010). A court must "determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *Id*. at 117 (internal quotation marks and alteration omitted). There is a bona fide dispute if "there is either a genuine

---

fees when an involuntary petition is dismissed on abstention grounds, with at least one court concluding that it does. *In re Macke Int'l Trade, Inc.*, 370 B.R. 236, 251 (B.A.P. 9th Cir. 2007) ("Importantly, the words 'under this section' immediately follow the word 'petition,' not 'dismisses.' All involuntary petitions are filed under § 303. Therefore, we read the statute such that the word 'dismisses' is modified only by the words 'other than on consent of all petitioners and the debtor [etc.].'"). As the parties here rely on the existence of a bona fide dispute as the basis for its fee award, and as such fees are plainly authorized by the statute, we leave for another day the question of whether a dismissal on abstention grounds also supports a fee award.

issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts." *Id*. "[T]he legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal." *Id*. (internal quotation marks omitted). An involuntary bankruptcy case cannot be the means of pressuring a debtor to pay a legitimately disputed debt. *See id.* at 117-18.

Critically, while a court is called upon to determine the presence of a bona fide dispute, it is not called on to resolve such dispute. *Id*. at 118. The petitioning creditor bears the initial burden of coming forward with evidence to "establish a prima facie case that no bona fide dispute exists. Once a prima facie case has been established, the burden shifts to the debtor to demonstrate the existence of a bona fide dispute." *Id*.

Here, Creditors challenge the finding of a bona fide dispute by arguing that the bankruptcy court failed to examine the pending litigation to determine if there was a bona fide dispute regarding alter ego liability. It is true that the mere existence of pending litigation, here litigation relating to Troy's liability on the Notes, or the filing of an answer is insufficient to establish the existence of a bona

13

fide dispute. *See In re Ross*, 63 B.R. 951, 960-61 (Bankr. S.D.N.Y. 1986). But, as the bankruptcy court concluded, "pending litigation over a claim strongly suggests" the existence of a bona fide dispute, even if it does not suffice to firmly establish that existence. *In re TPG Troy, LLC*, 492 B.R. at 159-60 (collecting cases). It is, however, clear that the bankruptcy court did not base its finding that a bona fide dispute existed solely on the fact that the parties were engaged in other pending litigation. Instead, the bankruptcy court found that in addition to the pending litigation:

> the Troy Entities "vigorously" dispute the factual underpinnings of the Petitioners' alter ego claims. In particular, the Troy Entities argue that they are not liable under the contracts as alter egos of the Issuers because no facts support alter ego liability; the N.Y. BCL does not govern the conduct of foreign entities; the Petitioners were made aware of and consented to the transactions at issue; and the Troy Entities did not engage in a fraudulent redemption transaction, as evidenced by the fact that the Notes did not go into default until three years after the Troy Entities sold their shares . . . in a purported arms-length transaction.

*Id.* We find no error in the bankruptcy court's findings.

In addition, the Creditors argue that these questions of fact required a hearing before resolution. We disagree. The job of the court when considering the

14

question "is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute." *In re BDC 56 LLC*, 330 F.3d at 118 (internal quotation marks omitted). The bankruptcy court did not have to determine whether the Troy Entities were actually alter egos of the Hellas companies before dismissing the petitions. *See id.* at 119 n.5. ("Where, as here, the documentary evidence establishes the existence of a bona fide dispute, however, a bankruptcy court is not obligated to hold an evidentiary hearing. There may be occasions when an evidentiary hearing would be helpful, but whether to hold one is within the court's discretion.").

### IV. Attorneys' fees.

When an involuntary petition is dismissed, "there is a presumption that costs and attorney's fees will be awarded to the alleged debtor." *In re Mountain Dairies*, 372 B.R. 623, 637 (Bankr. S.D.N.Y. 2007) (internal quotation marks omitted); *see also In re Skyworks Ventures, Inc.*, 431 B.R. 573, 576 (Bankr. D.N.J. 2010) (awarding attorney's fees and costs is the "majority rule"). "[B]ad faith is not a prerequisite to an award of costs and attorney's fees under § 303(i)(1)." *Lubow Mach. Co. v. Bayshore Wire Prods. Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 105 (2d Cir. 2000).

In awarding attorneys' fees and costs:

> Most of the courts . . . have adopted a totality of the
> circumstances test, in which certain factors are to be
> considered. These include (1) the merits of the
> involuntary petition; (2) the role of any improper
> conduct on the part of the alleged debtor; (3) the
> reasonableness of the actions taken by the petitioning
> creditors; and (4) the motivation and objectives behind
> the filing of the petition.

*In re Taub*, 438 B.R. 761, 775 (Bankr. E.D.N.Y. 2010) (internal quotation marks

omitted).

Here, the bankruptcy court decided to award fees "based on the totality of

the circumstances" because:

> Petitioning Creditors have put forward no evidence to
> rebut the presumption that the Troy Entities are entitled
> to an award of attorneys' fees. All parties to the
> involuntary petitions have been embroiled in countless
> lawsuits over the same claims in forums spanning from
> New York to Luxembourg. In addition, much of the
> work that is the subject of the request for attorneys' fees
> arises out of conduct initiated by Petitioning Creditors.
> The Troy Entities' counsel had no choice but to defend
> or respond to the various actions taken by Petitioning
> Creditors throughout this dispute.

*In re TPG Troy, LLC*, 2013 WL 3789344, at *4.

16

The bankruptcy court did not abuse its discretion in awarding fees here. As properly determined below, nothing in the record supports the Creditors' arguments against the award. *Id.* at *3-5. Moreover, an award of attorneys' fees and costs serves to discourage the filing of involuntary petitions to force debtors to pay on a disputed debt. At bottom, Section 303(i)(1) is a fee-shifting provision that requires no showing of bad faith, and aims to keep the putative estate whole. *See, e.g., In re Kidwell*, 158 B.R. 203, 213 (Bankr. E.D. Cal. 1993) ("[T]he operative principle [behind Section 303(i) is] that one who swats at the hornet had best kill it."). We agree with the bankruptcy court that "aggressive litigation conduct by Petitioning Creditors' counsel has substantially increased the attorneys' fees and costs expended to defend the Troy Entities against the improperly filed involuntary petitions," *id.* at *5, and find no error with the award made here.

**CONCLUSION**

Having examined the remainder of the Creditors' arguments and finding them to be without merit, we AFFIRM the judgments below.